## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES,** | |
| **Plaintiff,** | |
| **v.** | **Criminal Case No.** |
| | **1:09-CR-324-WSD-RGV** |
| **PHILLIP BRIAN JEFFERSON,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Phillip Brian Jefferson's ("Jefferson" or "Defendant") Objections [73] to the Report and Recommendation ("R&R") of Magistrate Judge Russell G. Vineyard [71] recommending denial of the Defendant's Motion to Suppress Evidence [17], Motion to Dismiss Counts One and Three of the Indictment [15 & 16], and Motion for a Court-Ordered Polygraph Test [52]. An evidentiary hearing on the motion to suppress evidence was conducted before Magistrate Judge Vineyard on November 19, 2009, and January 28, 2010 [57 & 61].

### I.   STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59;

1

Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted). "It is critical that the objection be sufficiently specific and not a general objection to the report." Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006). With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

## II. BACKGROUND

The Defendant is charged with possessing a firearm as a convicted felon, 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 1); possessing with the intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 2); and possessing a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A) (Count 3). The charges against the Defendant arise from a March 27, 2009, traffic stop and the subsequent search of the Defendant's car. The Defendant seeks to suppress evidence seized during the search of his vehicle.

The Court briefly summarizes the key facts of the case.[1]  On March 27, 2009, Officer Barthelemy of the Atlanta Police Department ("APD"), while on routine patrol in his patrol car, was checking vehicle license plates through a computer database.  While conducting the checks, a car sped past him.  Officer Barthelemy followed the car and ran the car's license plate information through the license plate database.  When Officer Barthelemy discovered the license plate was expired, he stopped the car with the expired tag.

When Officer Barthelemy was parked behind the stopped car, he could not see the driver because the car had tinted windows.  While sitting in his patrol car, Officer Barthelemy noticed the driver's side door of the car to be slightly ajar and that a foot was outside of the car.  Officer Barthelemy believed the car driver was "trying to flee" the scene before Officer Barthelemy could approach the vehicle.  Officer Barthelemy testified that he called to the driver, "to get back inside the vehicle."[2]

At some point before Officer Barthelemy encountered the Defendant at his car, the Defendant made a phone call to his fiancée to ask if she knew of any warrants outstanding against him, or any problems with the car.  Officer

_____

[1] The facts are more fully set forth in the R&R.

[2] Officer Barthelemy stated he was in his car when he made this statement.  The driver, who later was identified to be the Defendant, recalled that Officer Barthelemy communicated to him sometime after Officer Barthelemy got out of his vehicle and approached the Defendant's car.

Barthelemy stated that as he approached the driver's side door of the car, he saw that the door had been opened.  He ordered the Defendant to remain inside the car. When Officer Barthelemy finally arrived at the driver's side door, Officer Barthelemy saw the driver's door had been closed.  Standing at the closed door, Officer Barthelemy asked the Defendant for his license and registration.  Officer Barthelemy and the Defendant provided conflicting accounts of what happened next.

According to Officer Barthelemy, after he requested the Defendant's license and registration, the Defendant said, "Why the f--- are you stopping me?"  In response, Officer Barthelemy ordered the Defendant to get out of his car.  At first, Officer Barthelemy said that the Defendant immediately and forcefully opened the door, knocking Officer Barthelemy down.  When he later testified, Officer Barthelemy stated that the Defendant started aggressively pushing the door open, which supported his belief that the Defendant was trying to flee and that it would be safer for him if the Defendant remained in the car.  To prevent the Defendant from fleeing and to protect himself, Officer Barthelemy pushed against the car door to keep it shut so that the Defendant would stay inside the car.  Officer Barthelemy and the Defendant struggled over the car door, with Officer Barthelemy pushing against it to keep it closed and the Defendant pushing on it to get it to open.  The Defendant ultimately was able to push the door open and in

doing so knocked Officer Barthelemy to the ground.  Officer Barthelemy testified that at some point he tried but failed to grab the Defendant's wrist.  He tried again, but the Defendant was too big for Officer Barthelemy to detain him.  When the Defendant walked towards the back of his car, Officer Barthelemy sprayed the Defendant in the face with pepper spray.

According to the Defendant, when Officer Barthelemy asked for his license and registration, the Defendant responded with "What's the problem?" and Officer Barthelemy responded by repeating the Defendant's response "What's the problem?" in an aggressive tone.  The Defendant replied by asking: "Yeah, what did you pull me over for?"  The Defendant asserts that at this point Officer Barthelemy ordered him to get out of the car while simultaneously tugging on the car door handle to try to open the car door.  The car door was closed and locked, but the window was rolled down.  Officer Barthelemy reached through the open window and tried to open the door using the handle inside of the car.  The Defendant testified that he asked Officer Barthelemy what he was doing and pushed the officer's arm back out through the window.  The Defendant remained in his car and called his fiancée to tell her to contact a lawyer and the police, because he thought he was being harassed.  The Defendant remembers Officer Barthelemy talking on his radio to call for assistance.  Officer Barthelemy tried again to open the door and, with Officer Barthelemy reaching again into the open

window, the Defendant stated: "look, I don't want any problems.  I'll get out."
The Defendant tried to exit the car, but Officer Barthelemy decided to keep the
Defendant inside the car by leaning against the car door, pinning the Defendant
between the door and the car.  The Defendant testified that he ultimately was able
to push open the door and to slide "out of the car door."  The Defendant states that
Officer Barthelemy grabbed his left wrist, quickly let go, and then sprayed the
Defendant with pepper spray.  The Defendant fled the scene on foot.

The Magistrate Judge, in reconciling Officer Barthelemy's and the
Defendant's testimony offered at the November 19, 2009, evidentiary hearing,
decided to consider the Defendant's version of events on March 27, 2009, for the
purposes of the R&R.[3]

What happened after the Defendant fled is undisputed.  Officer Barthelemy
immediately radioed APD dispatch for backup and started chasing the Defendant
on foot.  Officer Barthelemy chased the Defendant for about one minute until he
lost sight of him as he ran into the woods.  Officer Barthelemy and the other APD

---

[3] On November 24, 2009, five days after the November 19, 2009, evidentiary
hearing, the Defendant moved for a court-ordered polygraph test to corroborate his
testimony from the suppression hearing.  The Magistrate Judge, in the R&R,
recommended the motion for a polygraph examination be denied.  Considering the
Magistrate Judge gave credit to the Defendant's testimony, the request for a
polygraph examination is moot and is denied for that reason.  Based on the
Magistrate Judge's crediting of the Defendant's testimony in considering the
Defendant's motions, there are no objections to the facts as found by the
Magistrate Judge and finding no plain error the Court adopts the Magistrate
Judge's findings of fact.

officers who arrived on the scene continued a perimeter search for the Defendant but were unable to find him.

Officer Barthelemy returned to the Defendant's car.  He impounded the vehicle pursuant to the ADP's standard operating procedure ("SOP") for vehicle impoundment.  The SOP authorizes officers to impound and inventory vehicles including those that are "parked on a city street without a tag or with an expired tag."  Officer Barthelemy and a fellow officer prepared an APD Vehicle Record and Impound Report, which listed the car's owner, driver, identification number, make, model, color, year, and tag, and the reason for the impound.

Officer Barthelemy also prepared property sheets that listed the items recovered from the car, the name and date of birth of the person that fled the scene, and the primary charge based on the Defendant's conduct.  The officers searched the passenger compartment of the Defendant's car and found, among other things, an IRS Form 1040 tax return bearing the name "Phillip Jefferson."  Bank statements bearing the name "Phillip Jefferson" were recovered from a gray bag under the driver's seat.  Based on the documents bearing the name "Phillip Jefferson," Officer Barthelemy and Lieutenant Rick Mason "pulled up a photograph of the individual the car was registered to," and Officer Barthelemy identified the Defendant Jefferson as the driver of the car.

The officers also found in the gray bag under the driver's seat, a powdered substance, suspected to be cocaine, and an unidentified solution.  Between the driver's seat and the front passenger seat, the officers recovered a Taurus .45 caliber firearm loaded with nine rounds of ammunition.  A magazine clip for a rifle was found in the trunk of the car.  The officers also recovered a scale and plastic baggies from the car.

On July 7, 2009, the Defendant was indicted on possession of a firearm by a convicted felon, possession of cocaine with the intent to distribute, and possession of a firearm in furtherance of a drug trafficking offense.  On July 31, 2009, the Defendant moved to dismiss the charges of possessing a firearm as a convicted felon and possessing a firearm in furtherance of a drug trafficking offense, Counts One and Three of the indictment.  He also moved to suppress the evidence seized during the inventory search.  The Defendant argues that Count One, which charges him with possessing a firearm as a convicted felon, must be dismissed on the grounds that § 922(g) is unconstitutional because it exceeds Congress's authority under the Commerce Clause and violates the Second Amendment.  The Defendant argues that Count Three, which charges him with possessing a firearm in furtherance of a drug trafficking crime, is required to be dismissed because § 924, like § 922(g), violates the Commerce Clause.  The Defendant next argues that

evidence seized from his car should be suppressed because it was obtained in violation of his Fourth Amendment rights.

On May 25, 2010, the Magistrate Judge, in the R&R, recommended that the Defendant's motions to dismiss and motion to suppress be denied.  The Magistrate Judge recommended specifically that:

1.  The Defendant's motion to suppress the evidence seized from his car be denied because he has no standing to challenge the search and seizures at issue, since he had no reasonable expectation of privacy in the car after he voluntarily abandoned it, thus the search and seizure were constitutional.

2.  In the alternative, and assuming the Defendant has standing to challenge the search of his car, the Defendant's motion to suppress evidence should be denied because the search was a lawful inventory search under APD policy.

3.  The Defendant's motion to dismiss Count One be denied because § 922(g) is constitutional under the Commerce Clause and does not violate the Second Amendment.

4.  The Defendant's motion to dismiss Count Three be denied because § 924 also does not violate the Commerce Clause.

The Defendant objects to the recommendation in the R&R that his motion to suppress evidence be denied.  He claims that although the Magistrate Judge credited his testimony over that of Officer Barthelemy, the Magistrate Judge's interpretation of the Defendant's version of the facts was flawed.  (Def.'s Obj. 2.) Specifically, the Defendant objected that:

1.  The Magistrate Judge erred in finding that Officer Barthelemy's conduct was reasonable, including because (A) Officer Barthelemy's orders were

not clearly communicated to him; (B) the Defendant objectively manifested his intent to comply with Officer Barthelemy's conduct; and (C) the circumstances were insufficient to justify Officer Barthelemy's conduct.

2. The Magistrate Judge's error in finding that Officer Barthelemy's conduct was reasonable led to the further error that the Defendant voluntarily abandoned his car and thus forfeited his Fourth Amendment rights in his car.

3. If the Defendant has standing to challenge the search of his car, the Magistrate Judge erred in finding the inventory search lawful because police misconduct caused the Defendant to involuntarily abandon his car and caused the improper search, so the evidence seized should be suppressed.

The Court reviews these three objections *de novo*. Those findings and recommendations to which an objection was not asserted are reviewed for plain error.

## III.   DISCUSSION

Where a party claims he was subject to an unconstitutional search under the Fourth Amendment, the party must first demonstrate that he has a reasonable expectation of privacy in the place searched. Rakas v. Illinois, 439 U.S. 128, 133-134 (1978). In other words, the party must establish that he has standing to challenge the search or seizure. United States v. Lately, 2005 WL 3434857, at *5 (E.D. Mich. Dec. 13, 2005). "[W]hether an individual has a legitimate expectation of privacy in the property requires a careful analysis of the facts of the particular case and the individual's expectation must be justifiable under the circumstances."

10

United States v. Crisp, 542 F. Supp. 2d 1267, 1274 (M.D. Fla. 2008) (citations omitted).

"One who voluntarily abandons personal property in the Fourth Amendment sense abandons one's reasonable expectation of privacy in that property and cannot challenge the constitutionality of its subsequent search or seizure." United States v. Anderson, 754 F. Supp. 442, 443 (E.D. Pa. 1990) (citing Abel v. United States, 362 U.S. 217, 241 (1960)) (citations omitted).  Whether a party has abandoned his privacy interest in personal property hinges on the intent of the party, which is determined objectively through the party's words and actions and other relevant circumstances.  Anderson, 754 F. Supp. at 443-444.  "Courts, have, of course, found that abandonment may not be voluntary if it is merely the product of police misconduct."  United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir. 1982).

When conducting traffic stops, police officers "literally risk their lives each time they approach occupied vehicles."  United States v. Stanfield, 109 F.3d 976, 978 (4th Cir. 1997).  Therefore, "the [Supreme] Court has consistently accorded officers wide latitude to protect their safety."  Id. at 978.  Police officers are authorized to order an individual to exit the vehicle during a lawful traffic stop. United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1336 (N.D. Ga. 2009) (citations omitted).  Additionally, "courts have held that because law enforcement officials have the right to order the driver to exit the car, they also

11

have the concomitant power to use appropriate forcible means to enforce this order." Clark v. Rusk Police Dep't, 2008 WL 4179322, at *2 (E.D. Tex. Sept. 8, 2008).

     A.  Whether Officer Barthelemy's conduct was objectively reasonable

The Defendant claims Officer Barthelemy's conduct was not objectively reasonable because:

1.  Officer Barthelemy's orders were not clearly communicated to him;

2.  The Defendant manifested his intent to comply with Officer Barthelemy's order; and

3.  The totality of the circumstances were insufficient to justify Officer Barthelemy's overall conduct.

The Defendant argues that to the extent Officer Barthelemy's instructions were clear, the Defendant stated his intent to comply and tried to comply with Officer Barthelemy's order to exit the car, but that Officer Barthelemy irrationally changed his mind about what he wanted the Defendant to do and he irrationally and confusingly tried to thwart the Defendant's attempt to get out of the car.  The Defendant thus asserts that Officer Barthelemy unreasonably and unnecessarily physically confronted him, and he blames the physical confrontation between them on Officer Barthelemy's failure to announce clearly his decision that the Defendant should stay in the vehicle after initially asking the Defendant to get out.

Police officers are authorized to use reasonable force to remove a person from a car in the face of even mild resistance by a driver. See United States v. Bradley, 2009 WL 4281260, at *3 n.5 (S.D. Ga. Nov. 5, 2009), adopted at 2009 WL 4348951, at *1 (N.D. Ga. Nov. 30, 2009) (police officer was "entitled to employ reasonable force to remove defendant from the vehicle" once defendant failed to comply with the officer's lawful order that defendant exit the vehicle); United States v. Rookard, 2007 WL 2176895, at *6 (W.D.N.Y. July 27, 2007), adopted at *1 (police officer could physically remove defendant from the car after defendant repeatedly refused to comply with the officer's orders to show his hands); United States v. Douglass, 467 F.3d 621, 622-623 (7th Cir. 2006) (police officer did not violate defendant's Fourth Amendment rights when, after defendant's refusal to exit the car, the officer reached through the partially opened window of the car to physically remove defendant from the car).

The Defendant and Officer Barthelemy both testified that Officer Barthelemy asked the Defendant to exit his car, and that the Defendant initially refused the request. It is uncontested that the Defendant elected to remain in his car even after Officer Barthelemy tried to open the car door. Officer Barthelemy reached his arm through the open window of the car in attempt to open the car door, and the Defendant pushed his arm back out through the window. The Defendant admits that he physically contacted the police officer in reaction to the

officer's effort to open the door of the Defendant's car, after the Defendant refused

Officer Barthelemy's request for him to get out of the car.  It was the Defendant,

not the officer, who initiated the confrontation on March 27, 2009.

From the beginning of the events on March 27, the Defendant verbally and

physically resisted Officer Barthelemy's attempts to control the situation, and

when asked to get out of his car he refused, electing instead to confront the officer

about why he had been stopped.  When the Defendant finally told Officer

Barthelemy that he would comply with the officer's order to exit the car, the

Defendant had already engaged in conduct that would signal to any police officer

that the Defendant was uncooperative, including by physically pushing the

officer's arm out of, and away from, the car as the officer took action to remove

the Defendant when he refused to get out voluntarily.  Faced with a resisting,

uncooperative defendant, Officer Barthelemy decided it was best not to make the

Defendant get out of his car but to keep him contained inside his vehicle.  To

insure that the Defendant would stay in place, Officer Barthelemy leaned on the

Defendant's car door to keep him inside.  It is irrelevant that Officer Barthelemy

did not verbally communicate this decision to the Defendant, because it is

undisputed that Officer Barthelemy manifested his clear intent that the Defendant

stay in his car by leaning against the car door so the Defendant was forced to

remain inside.  Although it is hard to reconstruct the precise sequence of events in

14

this situation, the Defendant admits that he struggled with Officer Barthelemy to open the door in response to the officer's efforts to keep it closed, and the Defendant admits that he forced the door open by overcoming Officer Barthelemy's resistance.  Although the Defendant may have stated that he did not "want any problems" and that he would get out of the car, the Defendant's aggressive actions, in pushing the car door open while the officer was leaning on it to keep it closed, discredit his statement that he wanted to cooperate.

The Defendant seeks to distinguish this case from Bradley, Rookard, and Douglass, upon which the Magistrate Judge relied.  These cases permit police officers to use reasonable force to extract a person from a car if the person exhibits even mild resistance towards the officers.  These cases support, on the facts here, that Officer Barthelemy's conduct during the traffic stop, including his decision to apply pepper spray when the Defendant would not remain in the car and elected instead to force his way out, constituted a reasonable response to an aggressive, uncooperative driver.  The Court finds that Officer Barthelemy's actions were objectively reasonable in light of the Defendant's uncooperative and aggressive behavior and the Defendant's objections are overruled.

The Defendant next objects to the findings of the R&R on the grounds that Officer Barthelemy's conduct, particularly the car door scuffle and the use of pepper spray, was not, under the totality of the circumstances, reasonable.  The

Defendant claims that <u>Bradley</u>, <u>Rookard</u>, and <u>Douglass</u> do not apply here because they stand for the proposition that the use of force by police officers is reasonable only when police officers "believe[] that they [are] in danger," and because Officer Barthelemy could not have reasonably believed he was in danger, his actions on March 27, 2010 were unconstitutional.  (Def.'s Obj. 7.)  The Defendant ignores that Officer Barthelemy had reason to doubt his safety because of the tinted windows in the Defendant's car, the Defendant's use of force against Officer Barthelemy's arm, and the Defendant's resistance towards Officer Barthelemy's attempt to order and remove the Defendant from the car.

"Fourth Amendment jurisprudence has long recognized the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1197 (11th Cir. 2002) (citations omitted).  <u>Bradley</u>, <u>Rookard</u>, and <u>Douglass</u> all authorize a police officer to use reasonable physical force to remove a driver from a car, "*in the interest of officer safety*," after the driver had refused to exit the car. R&R [71] at 17 (emphasis added).  Courts also consistently have held that the use of pepper spray constitutes a reasonable degree of force when a suspect is "either resisting arrest or refusing police requests." <u>Lawyer v. City of Council Bluffs</u>, 361 F.3d 1099, 1105 (8th Cir. 2004) (officer's use of pepper spray against driver deemed objectively reasonable after officer reached arm through the window of the

car to unlock the door and the driver started to roll up the window onto the officer's arm); Smith v. Addy, 343 F. App'x. 806, 808 (3d Cir. 2009) (*per curiam*) (officer's use of pepper spray was reasonable when individual was pulled over for a routine traffic stop, physically resisted the officer, and assumed a fighting stance).  The use of pepper spray is deemed excessive force only "in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."  Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) (citations omitted).

Officer Barthelemy testified that he believed the Defendant's forcing himself out of the car presented a risk to his personal safety,[4] and that the use of pepper spray was a reasonable, if not the preferential, response to what was happening. The Magistrate Judge logically concluded based on the totality of the circumstances that Officer Barthelemy's use of force to keep the car door closed and, when the Defendant forced his way out of the car, the use of pepper spray, were reasonable uses of force in the circumstances here.  See Lawyer, 361 F.3d at 1105.  At the moment Officer Barthelemy used the pepper spray, the Defendant had used physical force against Officer Barthelemy which entitled him to protect his personal safety.  This evidence clearly demonstrates that Officer Barthelemy's use of pepper spray was reasonable, and not excessive.

---

[4] Officer Barthelemy testified that it was "safer for [the Defendant] to stay inside [the car] than come outside."  (Nov. Tr. 12, 52-53, 64, 75-77, 94, 96, 98-100).

The Court finds that Officer Barthelemy did not violate the Defendant's Fourth Amendment rights in attempting to compel him to exit the car, attempting to restrain him inside of the car, and using pepper spray against him, and the Defendant's objection based on the totality of the circumstances is overruled.

### B. Whether the Magistrate Judge erred in finding the Defendant voluntarily abandoned his car

The Defendant contends that Officer Barthelemy's conduct induced him to flee the scene, and because Officer Barthelemy's conduct was unreasonable, the Defendant's abandonment of his car was not voluntary.  The Defendant also conclusorily asserts that Officer Barthelemy engaged in "illegal police conduct." (Def.'s Obj. 9.)

"Courts, have, of course, found that abandonment may not be voluntary if it is merely the product of police misconduct."  United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir. 1982).  The Magistrate Judge found that Officer Barthelemy's conduct was reasonable, did not constitute police misconduct, and that the Defendant voluntarily abandoned his car.

For the reasons already discussed, the Court finds that Officer Barthelemy did not engage in misconduct and the Defendant's objection based on the claimed involuntariness of his abandonment of his car is overruled.  The Defendant does not have standing to challenge the search because his abandonment of his car constituted his relinquishment of any expectation of privacy in the vehicle.

18

C. <u>Whether the inventory search was lawful</u>

The Defendant asserts that the Magistrate Judge erred in finding Officer

Barthelemy's conduct reasonable and the Defendant's abandonment voluntary,

which led to the Magistrate Judge's erroneous finding that the inventory search

was lawful.  The Defendant argues that Officer Barthelemy engaged in illegal

activity that induced him to flee, so the evidence seized from his car is fruit of the

poisonous tree and must be suppressed.  (Def.'s Obj. 9.)

The police may impound and search vehicles pursuant to their department's

SOP without running afoul of the Fourth Amendment.  <u>South Dakota v. Opperman</u>,

428 U.S. 364, 376 (1976).  This Circuit allows inventory searches in the absence of

a warrant "so long as the decision to impound is made on the basis of standard

criteria and on the basis of something other than suspicion of evidence of criminal

activity."  <u>Sammons v. Taylor</u>, 967 F.2d 1533, 1543 (11th Cir. 1992).  The

government has the burden of proving that the inventory-search exception to the

warrant requirement applies.  <u>Id.</u>  "Inventory searches are appropriate where police

have the authority to impound a vehicle and the search is consistent with

established policy."  <u>United States v. Davis</u>, 2008 WL 1927377, at *3 (M.D. Ala.

Apr. 28, 2008), adopted at *2 (<u>citing</u> <u>United States v. Williams</u>, 936 F.2d 1243,

1248 (11th Cir. 1991)).  The APD has an SOP stating when and under what

procedures a vehicle may be impounded and how an inventory search must proceed.  (Nov. 19 Hr'g Gov.'s Ex. 3).  Those procedures were followed here.

The Defendant has not contested the inventory search itself.  The Defendant merely states the evidence obtained during the search must be suppressed.  The Magistrate Judge found the inventory search proper, and the Court agrees that it was.  The Defendant had fled, been arrested prior to the March 27, 2009, encounter, and left his unregistered car along the side of the road.  The APD was allowed to impound the vehicle and to conduct an inventory search.  The Defendant's objection based on the inventory search is overruled.

## IV.   CONCLUSION

The Court concludes, based on its *de novo* review of the totality of the evidence in the record, that Officer Barthelemy conducted himself reasonably, the Defendant voluntarily abandoned his vehicle, and that the inventory search was proper.  The Court further finds that there is no plain error in the Magistrate Judge's R&R to any finding or recommendation to which an objection was not made.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** Magistrate Judge Russell G. Vineyard's Report and Recommendation [71] and Defendant Phillip Brian Jefferson's Objections [73] are **OVERRULED.**

20

**IT IS FURTHER ORDERED** that the Defendant's Motion for a Court-Ordered Polygraph Test [52], Motion to Suppress Evidence [17], and Motions to Dismiss Counts One and Three of the Indictment [15 & 16] be **DENIED**.

**SO ORDERED** this 4th day of October, 2010.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE